## Ohio Valley Coal & Mining Company v. Debose.

(Decided June 12, 1917.)

### Appeal from Union Circuit Court.

1. Damages—Pleading—Impairment of Earning Power.—To authorize a finding of damages for the permanent reduction of one's power to earn money, it is not necessary to allege in terms that plaintiff's earning capacity was permanently impaired, but only that plaintiff was permanently injured.

2. Damages—Permanent Injury—Proof.—In a servant's action for damages for personal injuries, evidence examined and held sufficient to warrant an instruction authorizing a finding of damages for the permanent reduction of plaintiff's power to earn money.

3. Damages—Verdict—Excessiveness.—In a servant's action for personal injuries, evidence examined and a verdict for $898.00 held not excessive.

MORTON & MORTON for appellant.

L. C. FLOURNOY and H. D. ALLEN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Frank Debose, an employe of the Ohio Valley Coal and Mining Company, brought this suit against the company to recover damages for personal injuries. A trial before a jury resulted in a verdict and judgment for plaintiff in the sum of $898.00. The company appeals.

The company is engaged in mining, and uses an electric wire to propel its motor. The trolley wire was uninsulated and was suspended from the roof of the mine by means of hangers. At the place of the accident the distance from the floor to the roof of the mine was from four to four and one-half feet, and persons employed about the track were compelled to work in a stooping position. One of the hangers supporting the wire was broken, and the wire was about eight inches below its usual position. While engaged in cleaning coal from the motor road, plaintiff's head came in contact with the wire. At that time he was wearing a wet cap. Plaintiff was thrown to the ground and rendered unconscious, and now claims that he was permanently injured.

It is not seriously contended that there was not sufficient evidence of the company's negligence to take the case to the jury. The only ground urged for a reversal is that there was neither pleading nor proof that plaintiff's earning capacity was permanently impaired.

While it is true that the petition does not allege in terms that plaintiff's earning capacity was permanently impaired, it does allege that plaintiff was permanently injured, and, under the repeated decisions of this court, this was all that it was necessary to allege in order to authorize a finding of damages for the permanent reduction of plaintiff's power to earn money. C. & O. R. Co., et al. v. Bland, 171 Ky. 430, 188 S. W. 498.

The evidence on the extent of plaintiff's injuries is as follows: Plaintiff says that prior to the accident he was an able-bodied man and had never been sick. His physician, who had treated the family for about two years, said that he never knew or heard of plaintiff's being ill before the accident. When plaintiff's head came into contact with the wire he was thrown to the ground and rendered unconscious. On returning to consciousness, his first exclamation was, "Oh, my head!" Though plaintiff went to work for the company after his injury, he claims that he has never felt well since the accident, but continues to suffer from pains in his head and back. His family physician says that after the accident he found plaintiff restless and nervous at times and unable to

sleep, and that, in his opinion, this condition continued at the time of the trial, which occurred about eighteen months after the injury. The company's former mine foreman says that, since the accident, plaintiff does not look like a healthy man. Bill Smith says that, since the accident, plaintiff hadn't slept much and did not appear to be enjoying as good health as he did prior to the accident. Dr. Donan says that he examined plaintiff the day before he testified. He found plaintiff suffering from neurasthenia, with the accompanying symptoms of mental indifference, loss of appetite, loss of sleep, constant headaches, etc.

On the other hand, the evidence for the company shows that plaintiff returned to work immediately after the accident, which occurred in December, and continued at work for some time. The company's physician further testified that plaintiff was not suffering from the effect of electricity, but from malaria, for which he treated him. It was also shown that the wire in question carried only five hundred volts, and where the contact was brief the effect of such a shock wore away in a short time. A number of the persons in the mine, who had come in contact with the wire, stated that the effect was only temporary and that shortly after the contact they felt as well as ever. While it may be true that plaintiff received no burn or other injury to his muscles or bones that was perceptible, and that the weight of the evidence is to the effect that he was not permanently injured, yet, in view of the uncontradicted evidence that, prior to the accident, he was a strong, able-bodied man, and that at the time of the trial he was suffering from neurasthenia, accompanied by insomnia, loss of appetite and nervous headaches, which would necessarily interfere with his ability to work, we cannot say that the evidence was insufficient to warrant an instruction authorizing a finding of damages for the permanent reduction of his power to earn money, or that the verdict for $898.00 was so excessive as to strike us at first blush as being the result of prejudice or passion on the part of the jury. That being true, we see no ground for disturbing the verdict.

Judgment affirmed.