## Veach's Admr. v. Louisville & Interurban Ry. Company

(Decided March 1, 1921.)

### Appeal from Shelby Circuit Court.

1. Railroads—Crossings—Care to be Exercised at Crossings.—A railroad crossing a public and much frequented highway is obliged to exercise ordinary care to avoid injury to persons on such highway, and if the tracks of the railroad lay in a deep cut and are so obstructed that the motorman or enginer can not see the highway on either side of the track, nor the traveler on the highway see the approach of the train on the track until within a few feet thereof, the sounding of the usual signal for highway crossing by bell or whistle on the train is not sufficent, but the trainmen must employ such other means as will reasonably safeguard persons on the highway crossing from danger by collision with trains.

2. Appeal and Error—Damages.—A verdict for general damages can not be disturbed by this court because it is too small.

3. Highways—Negligence of Driver of Motor Vehicle—Guest Riding Therein.—The negligence of the driver of an automobile is not ordinarily imputed to the guest riding therein.

BECKHAM & GILBERT for appellant.

WILLIS, TODD & BOND for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

One bright sunshiny day in May, 1918, while Katherine Veach was, with others, riding as a guest in an automobile from Louisville in the direction of Shelbyville, Kentucky, the machine was struck by an interurban electric car of appellee Louisville & Interurban R. Co., and all five of the occupants of the automobile killed and the machine completely demolished.

This action was brought by the administrator of Katherine Veach against the Louisville & Interurban R. Co. to recover damages for her death in the sum of $25,-000, but a trial resulted in a verdict and judgment in favor of the administrator for only three thousand dollars and he appeals.    The railway company is insisting on an affirmance of the judgment.

The accident happened at a grade crossing at Bonita, a small station on the interurban line near Simpsonville, on the main highway leading from Louisville to Shelbyville, Frankfort and Lexington.

The tracks of the Louisville and Nashville Railroad Company and that of the appellee Louisville and Interurban Ry. Co. parallel one another for some distance along near the place of the accident, and are only about 80 feet

apart. So in traveling the highway in an automobile from Louisville in the direction of Shelbyville the L. & N. tracks are first crossed at grade and then in about eighty feet the tracks of the interurban line are reached and crossed.

On the south-east side of the highway the tracks of both railroads lie in a deep cut and between them the dirt and rock are left in their original condition, forming a high embankment, on which at the time of the accident, weeds and grass several feet high were growing. This embankment obstructs the view of occupants of automobiles traveling towards Shelbyville on the highway so that it is impossible for them to see an approaching west bound car on the interurban tracks until within five or six feet of the tracks, nor can the motorman see an approaching automobile.

The automobile was traveling at about ten or twelve miles an hour at the time it came in contact with the interurban, while the interurban was going from twenty to twenty-five miles per hour. It is shown in evidence that the motorman in charge of the interurban car, on account of the embankment, did not and could not see the approach of the automobile to the crossing, until the automobile was within about five feet of the track. Thus it will be seen that this was, at the time of the accident, one of the most dangerous crossings to be found, and as the conditions above described had obtained for several years, and as other accidents had happened at this crossing, the interurban company must be presumed to have known of its unusually dangerous condition, for it was a veritable death trap.

In the record are several photographs which show the tracks and highways at and near the crossing, and the scrapheap that was made of the automobile. Aside from the motorman and others on the interurban car there were only one or two other persons who witnessed the accident living at the time of the trial to tell the story. Just when, if ever, the occupants of the automobile, or any of them, saw the approaching interurban car, is not known, but it conclusively appears in evidence that one in an automobile on the highway, as were they, could not see on to the tracks of the interurban to the south-east from which the car came until within about five or six feet of said tracks.

The motorman and others testified that the statutory crossing signals were given by the interurban car, and that a station signal was also given. Other witnesses tes-

tified that there was an electric signal bell at the crossing which was ringing at the time of the accident as well as after the collision. There was at the crossing the usual cross arm sign post, indicating a railroad crossing, but the evidence shows that this post was not very conspicuously located and the lettering thereon was old and rather dim. There was also such a cross arm post and electric signal bell at the L. & N. crossing nearby, and this it is contended by the administrator misled and confused persons who were strangers in that part of the country, as were decedent and her companions, into believing that the signal bell, if any was seen or heard, was one at the crossing over which they had just passed, and not at the crossing they were approaching.

Without going into greater detailed description of the place of the accident and the dangers which threatened travelers on the highway crossing, it will be sufficient to say that the crossing was so unusually dangerous as to require of the Interurban Railway Co., and its employees in charge of its cars passing over this crossing, the exercise of increased care commensurate with the known danger. It was not sufficient for the motorman to give only the statutory signals, provided for ordinary road crossing, nor were such signals and a station signal sufficient at this crossing to relieve the company of liability for such an accident. Ordinarily prudent persons operating trains over a highway crossing like this where from three to five hundred automobiles pass every day and scores of other vehicles and people on horseback and foot travel each twenty-four hours, would not run at a rate of 20 to 25 miles per hour onto a crossing, the approach to which could not be seen more than 5 or 6 feet on either side relying alone upon the ordinary statutory signals, but would employ other signals or precautionary measures to protect those who might reasonably be expected to be upon or suddenly come upon the highway crossing.

Such disregard for the life and limbs of other human beings is not common among ordinary mortals, and operators of a train who run it upon such an unusually dangerous and frequented highway crossing at a high rate of speed, are not exercising ordinary care, less than which renders them and the company liable for the injury done, unless saved by the contributory negligence of the one injured.

The administrator of Katherine Veach asks a reversal upon three grounds:

(1) Error of the trial court in limiting evidence as to the earning capacity of the decedent.

(2) Erroneous and prejudicial instructions to the jury.

(3) Diminutive, inadequate and insufficient award of damages.

The administrator was allowed to prove that Miss Veach, a woman of fifty years of age, had a business both at Chautauqua, New York, and St. Petersburg, Florida, from which she earned about $4,000.00 per year, but the court refused to allow the witnesses to testify from a verified income tax report made out by decedent only a short time before her death as to her income. This was not error. The report was not competent evidence in her favor although made to the government for the purpose of fixing the amount of her income tax, which said statement, it is said, made as small as possible, would have been against her interest in this case. Her written verified statement could not have become evidence in her favor. There were many other ways by which the administrator could have shown the earning capacity of his decedent, but having been allowed to show that she earned $4,000.00 the year before and had a regular business, we can not agree with counsel for appellant that the smallness of the verdict is directly or at all traceable to the failure of the trial court to admit the income tax report as evidence. No self serving declaration or statement of Miss Veach was competent when offered in favor of her administrator in this action, which would not have been competent if offered by her had she been living. Jackson Baptist Church v. Combs, 130 Ky. 255.

(2) Complaint is made that instruction No. 1 is erroneous because it specifically mentions the electric crossing bell in the following sentence:

"And if the jury believe from the evidence that this crossing was over a much travelled thoroughfare, and because of its location and surrounding unusually dangerous to travelers, and that the sounding of the whistle and ringing of the bell and the ringing of the electric bell stationed at the crossing was not reasonably sufficient to give reasonable notice of the approach of the car to the crossing, and the defendant knew this, or by the exercise of ordinary care could have known it, then it was the fur-

ther duty of the defendant, and its servants in charge of the electric car, at the time, to use such means to prevent injury to travellers at said crossing, as in the exercise of ordinary judgment might be considered necessary by ordinarily prudent persons operating the electric car.''

The instruction would have been better had it followed the usual form and told the jury that if it believed from the evidence that the crossing was especially dangerous and that the signal from the car bell and whistle was not reasonably sufficient under the circumstances to warn travellers, then it was the duty of the defendant's servants in charge of the car to use such other means to give warning of its approach as an ordinarily prudent person operating such a car would have adopted under like circumstances. C. & O. R. R. Co. v. Gunter, 108 Ky. 362; C. N. O. & T. P. Ry. Co. v. Champ, 31 R. 1054. We have condemned instructions which have singled out and called attention to particular evidence, especially bells like the one at this crossing, but this was under somewhat different circumstances. C. & O. R. R. Co. v. Bland, 171 Ky. 430.

In this case the appellant recovered a verdict under instruction No. 1, from which we have quoted showing that the jury was not in any way obstructed in their finding of fact in favor of plaintiff, appellant here, for it could have returned no verdict for appellant if it had not first found that the railway company was guilty of negligence and that Miss Veach was not guilty of such contributory negligence as but for which she would not have come to her death. Having found these facts it only remained for the jury to fix the amount of the award of damages. This was not done under instruction No. 1, of which complaint is made. The amount of the verdict is very small, and we are unable to account for this, but this was a matter wholly within the discretion of the jury. Under Civil Code, section 341, which reads:

''A new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, or in any other action in which the damages equal the actual pecuniary injury sustained; nor shall more than two new trials be granted to a party upon the ground that the verdict is not sustained by the evidence;'' this court is without power to reverse a judgment for smallness of damages.

Where only general damages, as in this case, are sought, as for pain and suffering, loss of earning power,

or loss to estate by destruction of power to earn money no new trial can or will be granted on account of the diminutiveness of the damages awarded.    Taylor v. Howser, 12 Bush 465; Rossi v. Jewel Jellico Coal Co., 157 Ky. 332; Ray v. Jefferies, 86 Ky. 367; C. & O. R. R. Co. v. Williams, 179 Ky. 333; Gregory v. Republic Coal Co., 189 Ky. 758.

Appellant insists that instruction E should not have been given, and we are inclined to the same view under the facts of the case.    In cases where a guest in an automobile is killed through the concurring negligence of the driver of the car and a third party the negligence of the driver is not imputable to the guest, and a recovery may be had against both the driver and the third party guilty of negligence or either of  them.    No  such  instruction should have been given in whole or in part in this case, but the giving of instruction E was clearly not prejudicial for if it had been followed by the jury no recovery at all could have been had by appellant.

Judgment affirmed.